[L. A. No. 2031.   Department Two.—August 1, 1908.]

ROBERT E. BOORAEM, Appellant, v. POTTER HOTEL
COMPANY, Respondent.

Malicious Prosecution—Probable Cause—Questions for Jury and
Court.—In an action for malicious prosecution, the burden of
proof is upon the plaintiff to prove want of probable cause. What
facts and circumstances amount to probable cause is a pure question
of law. Whether they exist or not, in any particular case, is a pure
question of fact. The former is exclusively for the court, the latter
for the jury. When the facts are uncontroverted, the question
resolves itself into one of pure law for the court's determination.

Id.—What Constitutes Probable Cause—Evidence.—Probable cause
is a suspicion founded upon circumstances sufficiently strong to war-
rant a reasonable man in the belief that the charge is true. In the·
present case, the evidence is reviewed and held not to show a want
of probable cause on the part of the defendant in causing the·
plaintiff's arrest.

APPEAL from a judgment of the Superior Court of Santa
Barbara County. Frank F. Oster, Judge presiding.

The facts are stated in the opinion of the court.

Henley C. Booth, and Louis H. Roseberry, for Appellant.

Barker & Bowen, W. S. Day, and Gray, Barker & Bowen,
for Respondent.

HENSHAW, J.—This action was prosecuted against the
defendant to obtain damages for malicious prosecution. At
the conclusion of the taking of plaintiff's testimony defendant
moved for a nonsuit upon several grounds. The court granted
the motion and from the judgment which followed, plaintiff
appeals. As we think the court was correct in granting the
nonsuit upon the ground that plaintiff had failed to prove a
want of probable cause, no other of the grounds need be con-
sidered.

The law touching the question is both simple and settled. It
is incumbent upon the plaintiff, and the burden of proof is
upon him in an action of this kind, to prove want of probable
cause. (*Davis* v. *Pacific Telephone Co.*, 127 Cal. 312, [57 Pac.

764, 59 Pac. 698].) "What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. The former is exclusively for the court, the latter for the jury." (*Ball* v. *Rawles,* 93 Cal. 222, [27 Am. St. Rep. 174, 28 Pac. 937].) If the facts going to establish the presence or absence of probable cause are controverted they must be passed upon by the jury before the court can determine the issue, but it is always for the court to say, as matter of law, whether or not the facts, the existence of which the jury may find, do or do not establish probable cause. Where the facts are uncontroverted, as in this case, the question resolves itself into one of pure law for the court's determination.

Coming to a consideration of the facts in this case, in connection with these well-established principles of law, the following was shown without conflict: Plaintiff was a mining engineer of high social and professional standing. Visiting California he purchased from the First National Bank of Los Angeles a letter of credit for five hundred dollars. He went from Los Angeles to the Potter Hotel at Santa Barbara, where he remained for about three days. During his stay he associated upon terms of friendship with other guests of the hotel, who were also of high social standing, though it is not made to appear that this fact was known to the hotel management. Making ready to leave Santa Barbara for San Francisco, he left word at the hotel office that he was about to depart for San Francisco, and would stay at the St. Francis Hotel in that city. He left specific directions that his mail should be forwarded to his new address. He likewise presented his letter of credit, asking the cashier in the office whether a draft upon this letter of credit would be accepted in payment of his bill, or whether he should go to a bank in Santa Barbara and draw the money to pay his bill. The hotel management agreed to accept a draft against his letter of credit. His bill amounted to about twenty dollars, and the cashier of the hotel herself drew a draft against his letter of credit in favor of the Potter Hotel Company for thirty dollars, paying him the difference. He then pursued his journey to San Francisco and took up his abode at the St. Francis Hotel. He had been there but a short time when the manager of the St. Francis Hotel informed him that he had received a message

from the Potter Hotel at Santa Barbara, asking to know upon what Los Angeles bank his letter of credit was drawn. He exhibited his letter of credit to the manager of the St. Francis Hotel, and thinking that some mistake might have been made in drawing the draft—which it will be remembered he did not himself write but only signed—he wrote to the Potter Hotel to the effect that his letter of credit was upon the First National Bank of Los Angeles and was good. That evening he was arrested by a police officer of San Francisco, was refused permission to communicate with friends so as to obtain bail, and was incarcerated in a common jail over night. The next morning he was released and discharged, word having been received from the Potter Hotel Company that the arrest was a mistake.

The Potter Hotel Company, after accepting the draft, deposited it in the usual course of business with its commercial bank in the city of Santa Barbara. By that bank it was forwarded to its correspondent in Los Angeles for collection. It passed through the clearing house and was thrown out by the First National Bank of Los Angeles upon which it was drawn, with the indorsement placed upon it, "Has no account," and thus dishonored it was returned to the Commercial Bank of Santa Barbara, which notified the Potter Hotel Company. Thereupon, the head bookkeeper, the cashier of the bookkeeping department, consulted with the manager of the hotel about procuring the arrest of plaintiff. The manager was reluctant to proceed, and the head bookkeeper, thinking that a mistake might have been made in the name of the bank upon which the draft was drawn, telephoned to the St. Francis Hotel and learned from the management there, as has been indicated, that the letter of credit bore the name of the First National Bank of Los Angeles. Since that bank had returned the draft with the indorsement above quoted, this served to confirm the suspicion that the letter of credit, as well as the draft, was fraudulent, and upon this the head bookkeeper consulted the chief of police of Santa Barbara, a complaint was sworn to, and plaintiff was arrested upon a telegraphic warrant following the filing of this complaint.

Subsequent to this the Potter Hotel Company received advices from the Los Angeles bank to the effect that it had made a mistake, that the draft was good and that it would pay it,

whereupon the Potter Hotel Company immediately telephoned to San Francisco and secured the release and discharge of plaintiff.

Here are presented, upon either side, all of the facts necessary for consideration. Upon the one hand it is argued that lack of probable cause is shown from the very conduct of the plaintiff in designating the hotel to which his mail was to be forwarded, and in actually going to that hotel as represented; that the First National Bank of Los Angeles is nearer to Santa Barbara than the St. Francis Hotel, and that before taking criminal proceedings the hotel company should have communicated with the Los Angeles bank and asked an explanation of the reason why the check was dishonored. It is further urged that the hotel company, before resorting to such drastic measures, should have consulted the district attorney, or have obtained other legal advice; and, finally, it is said—and of course it is true—that the conduct of plaintiff throughout was that of an honorable and upright man, and that there was nothing in his conduct to have excited suspicion.

But upon the other hand it is quite apparent that the hotel company, in its conduct, was not inspired by any malicious motive. Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. (*Davis* v. *Pacific Telephone Co.,* 127 Cal. 312, [57 Pac. 764, 59 Pac. 698] ; 2 Greenleaf on Evidence, secs. 453, 457.) It is equally apparent that there were presented to the hotel company very strong circumstances of suspicion. It was under no obligation to assume that an institution as prudent and careful as is a bank would have made so grave a mistake. It was under no duty, therefore, to have communicated with the bank to ask whether or not it had made a mistake. The indorsement upon the rejected draft meant but one thing—that it had been drawn upon a bank—not where the drawer had no funds, but where he had no account; and such an act, in the absence of explanation, was both a fraud and a crime. If the Potter Hotel Company, as is suggested it should have done, had consulted the district attorney, doubtless that officer, or any other attorney, would, upon this presentation of the facts, have said that the evidence was sufficient to justify the issuance of a criminal warrant. Such being the case it cannot be said that plaintiff established

a want of probable cause for his prosecution, absolutely unwarranted as that prosecution unquestionably and admittedly proved to be. The fault and error lay with an institution, which, of all, is supposed to be the least liable to errors of the kind—with the Bank of Los Angeles.

For the foregoing reasons the judgment appealed from is affirmed.

Lorigan, J., and Sloss, J., concurred.