[S. F. No. 6948. Department Two.—July 26, 1916.]

EMMA C. LEE et al., Appellants, v. ALEXANDER LEVISON et al., Respondents.

MALICIOUS PROSECUTION — BURDEN OF PROOF — MALICE — WANT OF PROBABLE CAUSE.—In an action to recover damages for malicious prosecution, the burden of proof is upon the plaintiff to establish both malice and want of probable cause.

ID.—PROBABLE CAUSE DEFINED.—Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.

ID.—EVIDENCE INSUFFICIENT TO ESTABLISH WANT OF PROBABLE CAUSE.— In this action for malicious prosecution, the trial court was justified, as matter of law, in determining from the evidence that the facts did not establish want of probable cause, and in granting a nonsuit.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Wm. M. Cannon, for Appellants.

Heller, Powers & Ehrman, and M. H. Wascerwitz, for Respondents.

MELVIN, J.—Action to recover damages for malicious prosecution of Emma C. Lee on a charge of embezzlement. The trial court granted a nonsuit on the motions of Alexander Levison and National Surety Company of New York.

The action was dismissed as to the other defendants. From the judgment following the nonsuit and from an order denying their motion for a new trial Emma C. Lee and H. Lee (her husband) appeal.

The Levisons and Mary Ostroski owned an apartment house, and in July, 1908, Mr. Levison employed Mrs. Lee as manager thereof and as housekeeper. A few months later the National Surety Company executed a bond to Mr. Levison indemnifying him against loss on account of any personal dishonesty of Mrs. Lee "amounting to larceny or embezzlement." As manager Mrs. Lee collected the rents, made certain expenditures, and accounted monthly to Mr. Levison. On April 19, 1909, Mr. Levison wrote her that beginning May 1st of that year he preferred to pay all bills of the apartment house at his office. He instructed her to get together and send to him any unpaid bills up to that time. She was authorized to pay bills for removing garbage and other similar items of less than five dollars, making reports of such expenditures at the next settlement with him. Plaintiff continued her practice of rendering monthly accounts until her discharge, which occurred on June 11, 1909. After her discharge difficulties arose between Mrs. Lee and Mr. Levison because of their disagreement regarding the balance of their accounts, and also because of her refusal to vacate the premises. She did leave the apartment house, after an interview with someone connected with the district attorney's office. Mr. Levison then authorized Mr. J. W. Bernstein, who had acted as his broker in obtaining the surety bond, to take up with the surety company Mrs. Lee's alleged default in payment of sums due to the owners of the apartment house. Mr. Bernstein examined her books, and after a conference with her wrote to the surety company a letter in which he charged that she had collected and failed to account for various rents, amounting in the aggregate to $158. He also stated that there were "other irregularities" which Mr. Levison was investigating. After a personal interview between Mr. Bernstein and the manager of the surety company the matter was turned over to Mr. Sayers, adjuster for that corporation, and he with Mr. Bernstein conducted the subsequent negotiations with Mrs. Lee. In their conferences Mrs. Lee submitted an itemized demand for credits amounting to something more than two hundred dollars. About half of

this sum was made up of alleged expenditures made after May 1, 1909, of amounts greater than five dollars. Plaintiff told Mr. Sayers and Mr. Bernstein that she had made payments of all of the sums shown by her itemized bill. Mr. Levison disallowed certain of these charges, and Mr. Bernstein and Mr. Sayers demanded payment from Mrs. Lee of $51.25, asserting that she owed Mr. Levison that balance. She declined to settle on the proposed terms. Mr. Sayers then told Mr. Bernstein to have Mrs. Lee arrested. It was in evidence that Mr. Levison, informed of the proposed arrest, refused to sanction it or to have anything to do with it. However, Mr. Bernstein swore to a complaint, charging Mrs. Lee with embezzlement of $32.50. She was tried and acquitted.

Appellant contends that Mr. Sayers and Mr. Bernstein acted within the scope of their agencies respectively for the surety company and the owners of the apartment house; that there was no "probable cause" for believing Mrs. Lee guilty of embezzlement; and that Mrs. Lee's arrest was inspired by malice on the part of all concerned in it. We will not discuss the questions of agency, because we believe that, even assuming the correctness of appellants' theories on that subject, they failed at the trial to establish want of "probable cause" for the arrest and the existence of malice on the part of those persons who procured it.

It is contended by appellants that since Mrs. Lee's retention of moneys collected by her was open and with claim of right, there was no basis for a charge of embezzlement. (Pen. Code, sec. 511.) But while it is true that Mrs. Lee openly charged her employers with certain sums when she did submit an alleged accounting, the collected funds were retained to offset demands against them which should have been included, if genuine, in previous monthly accounts. A reasonable man might well conclude that some of the offsets were fabricated. For example, the item "Paid . . . Miss Phillips tending door for 3 months $30.00" might well create such a suspicion as might also the item of nine dollars charged for carfare and an alleged indebtedness for "cleaning curtains—9 months." There were other charges which were open to a like suspicion regarding their genuineness, but which we will not take time to review in detail. It is incumbent upon the plaintiff in a case of this sort to prove both

malice *and* want of probable cause. The burden of proof was upon the plaintiffs in the action at bar to establish both of these elements of their alleged cause of action. (*Davis* v. *Pacific Telephone and Telegraph Co.*, 127 Cal. 312–319, [57 Pac. 764, 59 Pac. 698]; *Potter* v. *Seale*, 8 Cal. 217–221; *Grant* v. *Moore*, 29 Cal. 644–656; *Anderson* v. *Coleman*, 53 Cal. 188.) This court from the earliest history of the state has adopted the definition for "probable cause" derived from the discussion in Greenleaf's treatise on Evidence: "Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (2 Greenleaf on Evidence, secs. 453–457.) While there is some conflict in the testimony there is no denial of the receipt by Mrs. Lee of the letter forbidding the expenditure of sums greater than five dollars by her on account of the management of the apartment house, nor of the fact that she made monthly reports, nor of the demands made by her after her discharge for items of indebtedness greater than five dollars each, which, if proper charges, should have appeared in her monthly reports. In other words, the essentials were undisputed and the court properly determined, as matter of law, that the facts did not establish want of probable cause. Under the circumstances revealed the court was justified in granting the motion for nonsuit. (*Booraem* v. *Potter Hotel Co.*, 154 Cal. 99, [97 Pac. 65].) This conclusion relieves us of the necessity of discussing the question of malice attributed to defendants, although we are of the opinion that plaintiff failed to show the existence of malice on the part of any of them.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.